# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

### CASE NO.: 8:25-cv-02083

| | |
|---|---|
| JEFFREY PAFFRATH, M.D., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| THE GUARDIAN LIFE INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| *Defendant.* | ) |

## PLAINTIFF'S ORIGINAL COMPLAINT,
## REQUEST FOR DISCLOSURE and JURY DEMAND

1.      NOW COMES JEFFREY PAFFRATH, M.D., hereinafter referred to as "Plaintiff", and brings this action against THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, hereinafter referred to as "Defendant."

2.      Plaintiff brings this action to secure all disability benefits, whether they be described as short-term and/or long-term benefits to which Plaintiff is entitled under the disability insurance policies underwritten and administered by Defendant.

3.      Defendant has underwritten and administered the policies and has issued a denial of the benefits claimed under the policies by the Plaintiff.  The

policies at issue can be identified as Policy Numbers G5923460 and G8014800 for disability.

## I. PARTIES

4.    Plaintiff is a citizen and resident of Hillsborough County, Florida.

5.    Defendant is a properly organized business entity doing business in the State of Florida.  Defendant may be served with process by serving its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

## II. JURISDICTION AND VENUE

6.    This is an action for damages for failure to pay benefits under insurance policies and other related claims over which this court has jurisdiction. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The two parties are wholly diverse. Specifically, the Plaintiff is domiciled in the State of Florida and the Defendant, a foreign corporation, is properly incorporated in the State of New York located at 10 Hudson Yards New York, New York 10001.

7.    This court has personal jurisdiction over the present case. This court has personal jurisdiction over the Defendant because the Defendant meets the minimum contacts standard. Here, the Defendant purposefully availed themselves to the forum state, engaged in activities that could foreseeably lead the

Defendant to court in the state, and the claim at issue is directly related to the Defendant's contacts with the state and result from systematic and continuous activity such that the Defendant is essentially at home in the forum state. Finally, bringing this cause of action does not unduly offend the notions of fair play and substantial justice. *International Shoe v. Washington*, 326 US 310 (1945).

8.     This court is an appropriate venue for the present cause of action pursuant to 28 U.S.C § 1391(b)(2).

### III. THE CLAIM ON THE POLICY

9.     Plaintiff has been a covered beneficiary under disability benefits policies issued by Defendant at all times relevant to this action.  Policy No. G5923460 became effective October 21, 1999.  Policy No. G8014800 became effective October 21, 2000.

10.     Plaintiff purchased Defendant's disability coverage to insure financial income in the future should he become no longer able to work in his specialty despite spending over a decade of his life training for his occupation and additional time and money building his practice.

11.     Presently, Plaintiff is a 60-year-old man previously employed as an otolaryngologist ("Ear Nose and Throat "ENT" surgeon.")

12.     Otolaryngologist is classified under the Dictionary of Occupational Titles as Light with an SVP of 9 and considered to be highly skilled work.

13.    On December 5, 2019, Plaintiff was injured when an automobile crashed into him as he was riding his bicycle. This collision exacerbated previous injuries Plaintiff had sustained years prior while actively serving in the military and caused new injuries, as well.

14.    Due to Plaintiff's injuries, Plaintiff ceased actively working in a full-time time capacity on September 3, 2020.

15.    On this date Plaintiff was no longer able to work full-time from his sustained injuries of cervical degenerative joint disease and carpal tunnel syndrome resulting in paresthesia's in his bilateral upper extremities, jeopardizing his ability to safely perform surgery on-call at his then-employer, The Watson Clinic.

16.    Residual Disability benefits were *granted*.

17.    Plaintiff was initially given accommodations to work with supervisory assistance from his partners at The Watson Clinic in a limited capacity.

18.    Upon evaluation from a medical provider at The Watson Clinic, Plaintiff was restricted from working a full-time schedule and restricted from taking emergency call for his clinic's patients, as prolonged surgeries and higher frequency of performing surgery throughout the week exacerbated his symptoms.

19.    The Clinical Services Director Dawn Kirchner with The Watson Clinic informed Plaintiff that "*the other ENTs at the Clinic are not going to cover your patients*

*for you after every workday and 24 hours a day Friday through Monday so you can only work normal daytime hours. It is not fair to them and they have refused to do this.*" Ms. Kirchner emphasized to Plaintiff that providing on-call patient services was his responsibility.

20.    On February 11, 2021, The Watson Clinic cancelled Plaintiff's patients and was no longer able to accommodate Plaintiff's medical conditions, cover his emergency call or medical liability. Shortly after, The Watson Clinic bought-out Plaintiff's share in the practice and Plaintiff was asked to resign.

21.    Plaintiff sought multiple professional recruiters' assistance to help place him in a "part-time" role in his specialty; however, the Major Duties of his Regular Occupation and Specialty require that he work a full-time schedule and take call for his patients.

22.    Thus, Plaintiff's Specialty may not be performed "Residually", and he has been unable to secure employment given that his disabling impairments prevent him working full-time and ultimately jeopardize patients' safety.

23.    Plaintiff alleges he became Totally Disabled on February 11, 2021.

24.    Plaintiff filed for Total Disability benefits through the Plans administered by the Defendant, as well as two other similar plans for disability benefits with Provident Life & Accident Insurance Company ("Unum") and Lincoln National Life Insurance Company ("Lincoln").

25.    Both Unum and Lincoln agreed that Plaintiff is disabled; Unum agrees that Plaintiff remains Totally Disabled under his Own Occupation as an ENT surgeon through the present date and Lincoln agrees that Plaintiff is both disabled from his Own Occupation as an ENT surgeon and from Any Occupation Plaintiff would be suited for, within a collective description of related jobs.

26.    On February 7, 2022, Defendant had finished its review of Plaintiff's claim and denied his claim for on-going Total Disability.

27.    At the time Defendant denied Plaintiff further Total disability benefits, the disability standard in effect pursuant to the Plans was that Plaintiff must be considered unable to perform his "Own Occupation" that of an ENT surgeon.

28.    If granted the Plans would pay monthly benefits of $10,000.00.

29.    Defendant received Plaintiff's claim on February 1, 2021.

30.    After extensive delays, Defendant issued its determination of Plaintiff's claim on February 7, 2022, over one year after he filed the initial claim.

31.    On July 6, 2022, Plaintiff pursued his administrative remedies set forth in the Plans by requesting administrative review of the denial of benefits and overturn its adverse decision in line with the evidence he presented Defendant.

32.    Plaintiff submitted additional information including medical records to show that he is totally disabled from the performance of his own occupation as defined by the Plans.

33.    On October 17, 2022 Defendant informed Plaintiff that it would consider informal settlement of Plaintiff's claim and requested Plaintiff sent a demand to be negotiated.

34.    Plaintiff sent a demand on March 3, 2023, along with additional documentation of Plaintiff's disabling condition, including one vocational experts opinion of disability under the Plan's terms, as well as opinions of disability from two of Plaintiff's treating specialists, and one specialist evaluator from Plaintiff's employer.

35.    Defendant continued to assert a continuing review of Plaintiff's claim until December 16, 2024, two and a half years after Plaintiff's original appeal and nearly two and half years after Defendant informed Plaintiff it would re-review his claims.

36.    On December 16, 2024, Defendant notified Plaintiff that Defendant affirmed its original decision to deny Plaintiff's claim for long-term disability premium benefits.

37.    Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to perform the specialty for which he was insured.

38.    Defendant and Plaintiff ("the parties") agreed to engage a private mediator to explore a pre-suit resolution, extending the statute of limitations to 30 days after July 10, 2025, to August 9, 2025, should resolution not occur.

39.    The parties did not settle at the July 10, 2025 private mediation, thus this suit followed.

## IV. MEDICAL FACTS

40.    Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

41.    Plaintiff suffers from cervical spinal stenosis, cervical spondylolisthesis. carpal tunnel syndrome, including bilateral hand numbness affecting both thumbs, index and middle fingers; intermittent muscular twitches and spasms; radicular pain in the right arm; and tightness and aching in the scapular and thoracic areas of the back.

42.    Treating physicians document ongoing limitations and the continued pain that requires ongoing pain management.

43.    On August 12, 2020, Dr. Kadir Carruthers determined that Plaintiff was unsafe to perform his surgical and specialist duties as an ENT surgeon full-time following an evaluation of his functional limitations and medical conditions.

44.    On August 15, 2020, Ted Copeland, the Watson Clinic legal counsel shared a letter stating, "*No matter where Dr. Paffreth works, as long as he is working*

*with and for the Clinic, there will be some potential unpredictable risks involved whether he is operating in an elective situation or having emergency room or standard call in the evenings.*"

45. On February 1, 2023, Dr. Jason Saylor, Department of Family Medicine with the Watson Clinic, wrote an opinion letter regarding Plaintiff's disability, stating, "*I would anticipate Jeffrey only being able to work continuously for 2 hours per day with a maximum of 4 hours per day assuming his symptoms are mild at that particular time. If symptoms are more intense on a work day he would not efficiently be able to work for even 30 minutes successfully depending on requirements and demands of the set position given numbness of his upper extremities. In attempting to work more than he is actual able to he would likely exacerbate his symptoms and would be worse for the next couple of days making work not possible to any substantial degree. His line of work, being an ENT physician, requires substantial fine motor skills and unpredictable work hours, which are the two things he would unable to safely be able to perform for the safety of patients.*"

46. On June 18, 2024, Dr. Francisco Chelby, Chief Medical Officer of Lakeland Regional Health advised Plaintiff to resign his surgical privileges for patient safety, noting that Plaintiff's bilateral hand numbness greatly impeded his ability to perform surgery. Dr. Chelby submitted a letter stating the same to Defendant.

47.    Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's ability to perform his specialty, curtailing any work in his Own Occupation.

48.    Further, Plaintiff's physical impairments have resulted in chronic pain and discomfort that have progressed since he initially filed his claim; more recent imaging reports demonstrate Plaintiff's condition is more restrictive than previously found.

49.    Plaintiff's treating physicians document these symptoms.  Plaintiff does not assert that he suffers from said symptoms based solely on his own subjective allegations.

50.    The aforementioned impairments and their symptoms preclude Plaintiff's performance of the Major Duties of his specialty on a consistent basis. As such, Plaintiff has been and remains disabled per the terms of the Policy and has sought disability benefits pursuant to said Policies.

51.    However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits, asserting that because Plaintiff can work at all, he is not Totally Disabled despite losing his medical license and being unable to safely and predictably be able to perform surgical procedures.

## V. DEFENDANT'S UNFAIR CLAIMS HANDLING PRACTICES

53.    Defendant, with a pre-determined agenda to find Plaintiff not disabled, relies on a biased report from a consulting physician.  Defendant in bad faith relies on a non-medical review, who has not conducted a physical examination of Plaintiff, over Plaintiff's treating physicians who have examined Plaintiff over a long and frequent period of time, and with more knowledge of Plaintiff's condition.

54.    Defendant disregards the multiple reports establishing Plaintiff's claim from his providers.

55.    Defendant has failed to consider Plaintiff's credible complaints of pain and fatigue which limit Plaintiff's ability to function.

56.    Defendant has selectively reviewed Plaintiff's medical records and has cherry-picked only the excerpts from the medical records that support its pre-determined conclusion that Plaintiff is not disabled.

57.    Defendant has failed to apply proper definition of disability.

58.    Defendant has failed to consider the side-effects of Plaintiff's medications.

59.    Defendant's consultants completed their reports without examining Plaintiff.

60.    Defendant notified Plaintiff that Defendant affirmed its original decision to deny Plaintiff's claim for long-term disability benefits.

61.     Defendant committed gross violations of the Insurance Code with respect to timely notification of Defendant's determination(s).

62.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

63.     At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

64.     Defendant's determination was influenced by its conflict of interest.

65.     Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

66.     The long-term disability Plans gave Defendant the right to have Plaintiff to submit to a physical examination at the appeal level.

67.     A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

68.     More information promotes accurate claims assessment.

69.     Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

70.     Defendant's conduct as a whole has failed to furnish a full and fair review of Plaintiff's claim.

## VI. FIRST CAUSE OF ACTION:

### Breach of Contract

71.   Plaintiff repeats and re-alleges paragraphs 1 through 70 of this Complaint as if set forth herein.

72.   Plaintiff paid all premiums due and fulfilled all other conditions of the Plans.

73.   Under the terms of the Plans, Defendant is obligated to pay Plaintiff benefits, in full and without reservation of rights, during the period of time that Plaintiff is suffering totally disabled, as those words are defined in the Plans.

74.   In breach of its obligations under the aforementioned Plans, Defendant has failed to pay Plaintiff benefits in full and without any reservations of rights during the period of time that Plaintiff is suffering "totally disabled," as those words are defined in the Plans.

75.   Defendant stopped paying benefits to Plaintiff under the Plans, despite the fact that Plaintiff was totally disabled, in that he cannot perform the material duties of his own occupation/specialty, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow.

76.   Defendant breached the Plans when it stopped paying benefits to Plaintiff, despite the fact that Plaintiff was suffering totally disability, as that

phrase is defined in the Plans.  Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

77.    Plaintiff has complied with all Policies provisions and conditions precedent to qualify for benefits prior to filing suit.

78.    As a result of Defendant's breach, Plaintiff suffered financial hardship.

79.    By reason of the foregoing, Defendant is liable to Plaintiff for damages.

## VII. SECOND CAUSE OF ACTION:

### Violation of Florida Insurance Code

80.    Plaintiff realleges and incorporates each allegation contained in Paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.    Due to the aforementioned acts and omissions, Defendant has violated the Florida Insurance Code sections and articles in the following ways:

(a)    Florida Statute 626.9541 by misrepresenting the terms or benefits and advantages of The Policies;

(b)    Florida Statute 626.9541 by placing before the public materials containing untrue, deceptive, or misleading assertions, representations, or statements regarding The Policies;

(c)    Florida Statute 626.9541 by engaging in unfair settlement practices by (1) misrepresenting to Plaintiff a material fact or

policy provision relating to the coverage at issue; (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which Defendant's liability has become reasonably clear; (3) failing to promptly provide to Plaintiff a reasonable explanation of the basis in the Policies, in relation to the facts or applicable law, for Defendant's denial of Plaintiff's claim; (4) failing within a reasonable time to affirm or deny coverage of Plaintiff's claim; and (5) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

(d)    Florida Statute 626.9541 by misrepresenting the Policies by (1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; (3) making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact; (4) making a material misstatement of law; and (5) failing to disclose other matters required by law to be disclosed.

(h)    Plaintiff is totally disabled, in that he cannot perform the material duties of his own occupation, and he cannot perform

the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow;

(i) Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

(j) Defendant's interpretation of the definition of disability contained in the Policies is contrary to the plain language of the Policies, as it is unreasonable, arbitrary, and capricious;

(k) Defendant failed to furnish Plaintiff a Full and Fair Review;

(l) Defendant failed to specify information necessary to perfect Plaintiff's appeal;

(m) Defendant has denied Plaintiff based on a selective and incomplete review of the records;

(n) Defendant failed to credit Plaintiff's treating doctor's opinion;

(o) Defendant has wrongfully terminated Plaintiff's long-term disability benefits without evidence of improvement;

(p) Defendant's request for objective evidence was improper;

(q) Defendant failed to credit Plaintiff's credible complaints of pain and fatigue;

(r) Defendant failed to consider the side effects of Plaintiff's medications;

(s)   Defendant has wrongfully relied on consulting expert's opinions as substantial evidence;

(t)   Defendant has wrongfully relied on a reviewing doctor's opinion who failed to consider Plaintiff's occupation and/or vocational abilities;

(u)   Defendant unreasonably ignored Plaintiff's Social Security Administration determination;

(v)   Defendant failed to give Plaintiff an opportunity to respond to new evidence;

(w)   Defendant's objective is to terminate Plaintiff's claim which is contrary to its duty as a fiduciary to act in good faith;

(x)   Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff; and

(y)   Defendant failed to adopt and implement reasonable standards for prompt investigation of claims arising under its policies.

82.   Defendant knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of Florida Insurance Code, as above.

## VIII. THIRD CAUSE OF ACTION:

### Breach of Covenant of Good Faith and Fair Dealing

83.    Plaintiff repeats and realleges paragraphs 1 through 66 of this Complaint as if set forth herein.

84.    By selling the insurance policies to Plaintiff and by collecting substantial premiums therefore Defendant assumed a duty of good faith and fair dealing toward Plaintiff.

85.    The Plans contain an implied promise that they would deal fairly and in good faith with Plaintiff and would do nothing to injury, frustrate, or interfere with Plaintiff's rights to receive benefits under the Plans.

86.    Defendant breached its duty of good faith and fair dealing toward Plaintiff in one or more of the following ways:

(a)    By failing to pay benefits to Plaintiff when Defendant knew or reasonably should have known that Plaintiff was entitled to such benefits;

(b)    By interpreting ambiguous Plans provisions against Plaintiff and in favor of its own financial interests;

(c)    By interpreting the factual circumstances of Plaintiff's disability condition against Plaintiff and in favor of its own financial interests;

(d)    By failing to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled, including several determinations by Plaintiff's treating physician;

(e)    By misrepresenting Plan coverage, conditions, exclusions, and other provisions;

(f)    By interpreting the definition of disability contained in the Plans contrary to the plain language of the Policies and in an unreasonable, arbitrary, and capricious manner;

(g)    By failing to provide a reasonable explanation of the basis for the denial of disability benefits to Plaintiff; and

(h)    By compelling Plaintiff to initiate this action to obtain the benefits to which Plaintiff was entitled under the Plans.

87.    By reason of Defendant's wrongful acts in breach of the covenant of good faith and fair dealing, Plaintiff suffered financial hardship, substantial emotional distress, mental anguish, and pain and suffering which exacerbated his depression and anxiety.

88.    The actions of Defendant amount to egregious tortuous conduct directed at Plaintiff, a consumer of insurance.

89.    Defendant's actions directed at Plaintiff are part of a similar conduct directed at the public generally.

90.     Defendant's actions were and are materially misleading and have caused injury to Plaintiff.

91.     Defendant carelessly relied on its own flawed review of the records instead of in-person medical examinations to decide to discontinue paying benefits.

92.     By reason of Defendant's wrongful acts in breach of the covenant of good faith and fair dealing, Defendant is liable to Plaintiff for compensatory damages and, for its egregious tortuous conduct, punitive damages, and attorneys' fees, costs, and disbursements incurred in connection with this action.

## IX. FOURTH CAUSE OF ACTION

### Fraud

93.     Plaintiff realleges and incorporates each allegation contained in paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94.     Defendant acted fraudulently as to each representation made to Plaintiff concerning material facts for the reason it would not have acted and which Defendant knew were false or made recklessly without any knowledge of their truth.  The representations were made with the intention that they be acted upon by Plaintiff, who relied on those representations, thereby causing injury and damage to Plaintiff.

## X. FIFTH CAUSE OF ACTION

### Prompt Payment of Claim

95.    Plaintiff realleges and incorporates each allegation contained in paragraphs 1 through 78 of this Complaint as if fully set forth herein.

96.    Defendant failed to timely request from Plaintiff any additional items, statements or forms that Defendant reasonably believed to be required from Plaintiff, in violation of Florida Statute § 627.6131.

97.    Defendant failed to notify Plaintiff in writing of the acceptance or rejection of the claim not later than the ninetieth business day after receipt of all items, statements, and forms required by Defendant in violation of Florida Statute Florida Statute § 627.70131

98.    Defendant delayed payment of Plaintiff's claim in violation of Florida Statute § 627.6131.

## XI. SIXTH CAUSE OF ACTION

### Statutory Interest

99.    Plaintiff realleges and incorporates each allegation contained in paragraphs 1 through 82 of this Complaint as if fully set forth herein.

100.    Plaintiff makes a claim for penalties of 8.9% statutory interest on the amount of the claim along with reasonable attorneys' fees for violations of the Florida Insurance Code

## XII. CAUSATION

101.   The conduct described in this Complaint was a producing and proximate cause of damages to Plaintiff.

## XIII. DECLARATORY RELIEF

102.   Pleading further, Plaintiff would show he is entitled to declaratory relief pursuant to Chapter 86 of the Florida Statutes.  Specifically, Plaintiff would show that he is entitled to declaratory relief due to Defendant's breach of its contractual obligation under the terms of The Policy.  FL. STAT. §§  86.011-121

103.   The evidence at trial will show that Plaintiff submitted a timely and properly payable claim for long-term disability benefits to Defendant.   The evidence will show that Defendant denied Plaintiff benefits which it contractually owes, because it claims that Plaintiff's condition does not meet the Policy's definition of "disabled".

104.   The conduct of Defendant as described above creates uncertainty and insecurity with respect to Plaintiff's rights, status, and other legal relations with Defendant.   Therefore, Plaintiff requests the Court exercise its power afforded under Chapter 86 of the Florida Statutes and declare the specific rights and statuses of the parties herein.  Specifically, Plaintiff requests this Court review the facts and attending circumstances and declare that he is disabled as that term is both commonly understood and as defined by the insurance contracts made the basis of this suit.

## XIV. ATTORNEYS FEES

105.    Plaintiff prays that the Court award costs and reasonable and necessary attorney's fees as are equitable and just under Chapter 57 of the Florida Statues including Section 104, Section 105, and Section 115.  FL. STAT. §§  57.104-05, 115

## XV. REQUEST FOR DISCLOSURE

106.    Pursuant to Florida Rule of Civil Procedure 1.280, Plaintiff requests the Defendant disclose, within 60 days of service of this request, the information or material described in Rule 1.280 of the Florida Rule of Civil Procedure.

## XVI. JURY DEMAND

107.    In accordance with Federal Rule of Civil Procedure, Plaintiff requests a trial by jury of all issues raised in this civil action that are triable by right (or choice) by a jury.

## XVII. KNOWLEDGE

108.    Each of the actions described herein were done "knowingly" as that term is used in the Florida Insurance Code and were a producing cause of Plaintiff's damages.

## XVIII. RESULTING LEGAL DAMAGES

109.    Plaintiff is entitled to the actual damages resulting from Defendant's violations of the law.  These damages include the consequential damages to her economic welfare from the wrongful denial and delay of benefits; the mental

anguish and physical suffering resulting from this wrongful denial of benefits; and continued impact on Plaintiff; lost credit reputation; and the other actual damages permitted by law.  In addition, Plaintiff is entitled to exemplary damages.

110.    As a result of Defendant's acts and/or omissions, Plaintiff has sustained damages in excess of the minimal jurisdictional limits of this Court.

111.    Plaintiff is entitled under law to the recovery of prejudgment interest at the maximum legal rate.

112.    Defendant's knowing violations of the Florida Insurance Code entitle Plaintiff to the attorneys' fees, treble damages, and other penalties provided by law.

113.    Plaintiff is entitled to statutory interest on the amount of his claim at the rate of 8.9% per year as damages under the Florida Statutes § 55.03

114.    Plaintiff is also entitled to the recovery of attorneys' fees pursuant to Chapter 57 of the Florida Statues including Section 104, Section 105, and Section 115.  FL. STAT. §§  57.104-05, 115

## XIX. PRAYER

115.    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Court GRANT Plaintiff declaratory and injunctive relief, finding that he is entitled to all past due short-term and long-term disability benefits yet unpaid under the terms of the Plans, and that Defendant be ordered to pay all future short-term and long-term disability benefits according to the terms of the

Plans until such time as Plaintiff is no longer disabled or reaches the benefit termination age of the Plans.

116.    Enter an order awarding Plaintiff all reasonable actual and punitive damages, pre- and post-judgment interest as allowed by law, attorneys' fees, costs of suit and expenses incurred as a result of Defendant's wrongful denial in providing coverage, and:

117.    Enter an award for such other relief as may be just and appropriate.

Dated: August 6, 2025

Respectfully submitted,

*/s/ Denise A. Mutamba*
Denise Mutamba Esq.
Attorney for Plaintiff
Florida Bar No. 111727
MDM Legal, PLLC
7754 Okeechobee Blvd, #4-3068
West Palm Beach, FL 33411
Telephone: (561) 872-3601
Email: denise@mdmattorneys.com
Secondary Email: filing@mdmattorneys.com
*Lead Counsel for Plaintiff*

Britney Anne Heath McDonald
MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW, L.L.P.
Tex. Bar. No. 24083158
Fed. I.D. Bar No. 2621983
britney@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
*Counsel for Plaintiff*